UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**HEALTHPRO BRANDS, INC.,**

  Plaintiff,

 v.            Case No. 1:23-cv-482

**TODD WICHMANN, et al.**     JUDGE JEFFREY P. HOPKINS

  Defendants.

**OPINION AND ORDER**

  Plaintiff HealthPro Brands, Inc. ("HealthPro") sued Todd Wichmann, its ex-CEO, alleging that he mismanaged funds, stole intellectual property, and, after resigning from his position at HealthPro, unlawfully competed with HealthPro by setting up his own company, InStar Brands LLC[1] (InStar—also a defendant here). Wichmann and InStar now move to dismiss the claims against them, or in the alternative, stay this action, on the grounds that Wichmann's employment agreement with HealthPro requires the parties to arbitrate HealthPro's claims. Doc. 14. Having reviewed the employment agreement, the Court agrees that almost all of the claims asserted in this action are subject to arbitration. Accordingly, the Court **STAYS** this matter pending completion of that contractually required arbitration.

**BACKGROUND**[2]

  HealthPro is a closely held Ohio corporation that manufactures retail and wholesale food safety products. Compl., Doc. 1, ¶¶ 1–2. It markets its products under the brand names

---

[1] The complaint lists both InStar Brands LLC and Instar Brands as defendants. The Court will refer to them collectively as "InStar."

[2] As this matter comes before the Court on a motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"Fit," "Fit Fresh," and "Fit Organic." *Id.* Until 2021, HealthPro employed Wichmann as its CEO. *Id.* at ¶ 13. During his nearly twenty-year tenure, Wichmann allegedly spent company funds in "bizarre" ways. *Id.* at ¶ 14. For example, HealthPro alleges Wichmann purchased gas masks and furniture for several "safehouses" throughout the country. *Id.* He also started another company—co-defendant InStar—with company funds while still working as HealthPro's CEO. *Id.* Wichmann often claimed that HealthPro was "his" and that he personally owned HealthPro's formulas and products, even though he was in fact only a minority shareholder. *Id.* at ¶ 16.

In 2021, HealthPro's board sought to market the company for sale. *Id.* at ¶ 17. It lined up potential purchasers, all of whom backed out after reviewing HealthPro's financial records. *Id.* at ¶ 18. According to one prospective buyer, the financial records revealed that Wichmann was using HealthPro as "his personal line of credit." *Id.* During this time, Wichmann also showed interest in purchasing a majority share of HealthPro and stated that he would resign as CEO otherwise. *Id.* at ¶ 19. He ultimately made good on the latter, resigning around the end of August 2021. *Id.* at ¶ 20.

After he resigned, HealthPro learned more about Wichmann's former expenditures. *Id.* at ¶ 22, PageID 6. HealthPro also discovered that Wichmann was marketing products via his new company—InStar—that seemed eerily similar to its own products. *See id.* at ¶¶ 24–33, PageID 6–8; Doc. 1-3, PageID 17–20. HealthPro responded to this discovery by filing suit in Ohio state court, seeking injunctive relief against Wichmann to prevent him from violating his employment agreement's restrictive covenants and from misappropriating HealthPro's trade secrets. Compl., *HealthPro Brands, Inc. v. Wichmann*, A2200047 (Hamilton Cnty. Ct.

Com. Pl. Jan. 6, 2022).[3] In its state-court complaint, HealthPro expressly noted that it was asserting *solely* claims based on the restrictive covenants in Wichmann's employment agreement, even though it thought it had additional claims against him. *See id.* at ¶ 17. HealthPro also explained why. While it believed it had claims against Wichmann for "breach of contract, breach of his duty of loyalty, breach of his fiduciary duties, unjust enrichment, theft, conversion, [and] tortious interference with contract/prospective business relationships," HealthPro said it could not pursue those claims in that action because any claims beyond those based on the restrictive covenants were subject to another provision in the parties' employment agreement—an arbitration clause. *Id.* The state lawsuit proceeded to a final judgment in the form of an agreed permanent injunction preventing Wichmann from "manufacturing, supplying, marketing, or selling any products which use proprietary formulas owned by [HealthPro]," and from using HealthPro's trademarks, brand names, or logos. Agreed Order Granting Permanent Injunction, *HealthPro Brands, Inc. v. Wichmann*, A2200047 (Hamilton Cnty. Ct. Com. Pl. Mar. 22, 2022).

Over a year later, HealthPro filed the present federal lawsuit against Wichmann, InStar Brands, LLC, and InStar Brands (the registered trade name of InStar). In its Complaint, HealthPro repeats many of the allegations that it included in the original state lawsuit. Doc. 1. Indeed, many paragraphs from the Complaint appear to be lifted from, or at the very least very similar to, that earlier state-court complaint. Based on these allegations, HealthPro advances six claims: a breach of fiduciary duty claim, (Count I); a conversion claim, (Count II); a Lanham Act claim, (Count III); an Ohio Deceptive Trade Practices Act claim, (Count

---

[3] The Court "may take judicial notice of proceedings in other courts of record." *Dates v. HSBC*, __ F. Supp. 3d __, 2024 WL 860918, at *1 n.1 (S.D. Ohio 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

IV); a tortious interference claim, (Count V); and a breach of duty of loyalty claim, (Count VI). *Id.* at PageID 9–13. If many of these claims sound familiar, that's because they should; HealthPro's claims here (other than the Lanham Act and Deceptive Trade Practices Act claims) are expressly included in the laundry list of claims that HealthPro says that it would have pursued in the state court action but for the arbitration clause in Wichmann's employment agreement.

In response to the Complaint, Wichmann and InStar moved to dismiss or, in the alternative, stay this action, arguing that Wichmann's employment agreement required the parties to arbitrate all of the claims HealthPro advances here. Doc. 14. HealthPro responded, (Doc. 17), and Wichmann and InStar replied, (Doc. 19). The matter is ripe for review.

## JURISDICTION AND CHOICE OF LAW

The Court has jurisdiction over HealthPro's Lanham Act claim, 15 U.S.C. § 1125, because it presents a federal question. 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over HealthPro's remaining state law claims because they arise out of the same "nucleus of operative facts" as its federal claim. 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

The Court applies Ohio law when determining the scope of the arbitration clause because the parties have agreed, via the employment agreement's choice-of-law provision, to apply Ohio law. Doc. 14-1, ¶ 16, PageID 93; *Eagle Express, Inc. v. Paycor, Inc.*, __ F. Supp. 3d. __, 2024 WL 1874966, at *2 (S.D. Ohio 2024).

## LEGAL STANDARD

Wichmann and InStar move to dismiss HealthPro's claims (or stay this action) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 14, PageID 77). Although Rule

4

12(b)(6) is a viable vehicle for such a motion, *see Teamsters Loc. Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014), the traditional Rule 12(b)(6) plausibility standard is a poor fit for evaluating the parties' legal arguments. Wichmann and InStar do not argue that HealthPro's allegations are implausible such that they fail to give rise to a reasonable inference that the defendants are liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, they argue that HealthPro's claims are covered by an arbitration provision that requires the parties to adjudicate their dispute before an arbitrator rather than this Court. To determine whether the parties must arbitrate, the Court asks simply whether the parties agreed to arbitrate the claims at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). If they have, the Court must, under the Federal Arbitration Act, either stay the action or dismiss the action without prejudice. 9 U.S.C. § 3; *1st Choice Auto Brokers, Inc. v. Credit Acceptance Corp.*, No. 2:06-cv-816, 2007 WL 2079722, at *2 (S.D. Ohio July 17, 2007) ("The Sixth Circuit has interpreted [9 U.S.C. § 3] as permitting dismissal of cases in which all claims are referred to arbitration.").

## LAW AND ANALYSIS

Wichmann's employment agreement with HealthPro provides that, "except with respect to disputes under paragraphs 5, 6, and 7 . . . Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be [arbitrated]." Doc. 14-1, ¶ 18, PageID 94. Paragraphs 5, 6, and 7 of the agreement are the restrictive covenants that forbade Wichmann from disclosing confidential information or competing with HealthPro for a period after the end of his employment and acknowledged that any trade secrets, inventions, or other intellectual property developed during Wichmann's employment belonged to HealthPro. *Id.* at ¶¶ 5–7, PageID 90–91. As described above, HealthPro alleged that Wichmann violated those paragraphs in its state-court suit, which explains why it told that

5

state court that *those* state claims were *not* subject to arbitration, but that other unraised claims would be.[4] What is perhaps more surprising is that HealthPro now appears to have changed its view of the arbitration clause, such that it seeks to assert in this Court several of these previously unraised claims against Wichmann. As a result, the Court must determine whether HealthPro's newly raised claims arise out of or relate to Wichmann's employment agreement. If so, they must be arbitrated.

A.   **Most of HealthPro's Claims Relate to Wichmann's Employment Agreement.**

In assessing whether a dispute is subject to arbitration, a threshold question is whether the arbitration provision at issue is broad or narrow. *Acad. of Med. of Cincinnati v. Aetna Health, Inc.*, 842 N.E.2d 488, 492 (Ohio 2006). Arbitration clauses that require parties to arbitrate any dispute "arising out of or relating to" an underlying agreement are particularly broad. *Id*. at 492–93. Consistent with that, disputes "relat[e] to" an agreement if they arise from the relationship that the agreement creates. *Id.* at 493. And beyond that, the Supreme Court instructs that:

> "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*Id*. at 492 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (quotes omitted).

---

[4] While the Court evaluates the scope of the arbitration provision in the parties' agreement from a blank slate, an argument could be made (and Wichmann and InStar seem to allude to it, *see* Doc. 14, PageID 75–76) that HealthPro is estopped by its representations in the prior state suit from now arguing that its claims are not subject to the arbitration provision. Although the Court does not rely on estoppel, the Court agrees that HealthPro's about-face is striking.

6

Applying those principles here, the Court determines that almost all of HealthPro's claims necessarily "aris[e] out of or relat[e] to" the employment agreement between the parties in that they directly arise out of the business relationship that the contract creates. Doc. 14-1, PageID 94. Start with Count I—HealthPro's breach-of-fiduciary-duty claim. HealthPro states that "[a]s CEO and a minority shareholder of a closely held company, Wichmann at all relevant times, owed [HealthPro] and its shareholders the duties of a fiduciary." Doc. 1, ¶ 35, PageID 9. HealthPro then describes how actions Wichmann took *as CEO at HealthPro* breached that duty. *Id.* Any such claim necessarily relates to Wichmann's employment—indeed, Wichmann's employment is the sole reason he owed the fiduciary duty at all. Accordingly, Count I is subject to arbitration.

Count II is much the same. HealthPro claims that Wichmann converted its property by spending money for personal use, indebting HealthPro, and taking and keeping HealthPro's formulas and marketing materials. *Id.* at ¶¶ 38–41, PageID 9–10. In other words, Wichmann, *during his tenure as CEO,* converted HealthPro's property—property that he was only able to convert because he was employed as CEO. HealthPro cannot help referencing actions that Wichmann took as CEO to forward this claim, so the claim relates to the employment agreement and must be arbitrated.

Count V likewise references Wichmann's employment. There, HealthPro alleges that Wichmann's actions *as CEO at HealthPro* were taken to "intentionally interfere" with prospective purchasers of HealthPro. *Id.* at ¶ 42–52, PageID 12–13. This claim, for the same reasons as those above, relates to Wichmann's employment and therefore must be arbitrated.

The same result obtains for Count VI. HealthPro alleges that Wichmann breached a duty of loyalty that he owed by virtue of his employment with the company. *Id.* at ¶¶ 53–56,

PageID 13. Even HealthPro recognizes in its response that this claim likely relates to Wichmann's employment. Doc. 17, PageID 108 n.2. The Court agrees. HealthPro's duty-of-loyalty claim is related to Wichmann's employment with HealthPro and accordingly must be arbitrated.

That leaves Counts III and IV. They are admittedly a bit more difficult to analyze. They both allege that Wichmann and InStar have violated either the Lanham Act[5] (Count III) or the Ohio Deceptive Trade Practices Act (Count IV) in two ways: (1) by claiming that the proprietary formulas integral to the "Fit" brand line belonged to Wichmann and could now lawfully be used by InStar, and (2) by copying facets of HealthPro's packaging when marketing their new food safety products. Doc. 1, ¶¶ 42–46, PageID 10–12.

In terms of assessing arbitrability, the Court concludes that, while HealthPro's Complaint captions these claims as one "Count" (or, more accurately, one Lanham Act claim and one Ohio Deceptive Trade Practices Act claim), it actually alleged two distinct violations of each statute. The first alleged violation—that Wichmann misrepresented HealthPro's proprietary formulas were his—strikes the Court as at least "related to" Wichmann's employment. Sure, a hypothetical person *could* claim out of the blue that he owned formulas integral to another company's products, but the real reason Wichmann's statement is *misleading* (which is the entire basis of liability under both statutes) is because he was HealthPro's former CEO. Wichmann stated, "I have all the formulas *I did for 20 years*, so all those formulas are mine. So, what I'm doing is I'm *relaunching* FIT into InStar Brands." *Id.* at

---

[5] A predicate question to whether the parties agreed to arbitrate claims arising under a federal statute is whether claims under that statute are "nonarbitrable." *Stout*, 228 F.3d at 714. But HealthPro did not argue that its Lanham Act claim was not arbitrable—only that it had not agreed to arbitrate *this* Lanham Act claim. Accordingly, the Court declines to address the categorical arbitrability of Lanham Act claims because HealthPro has forfeited any such argument at this point. *See Garcia v. Univ. Behav. Health of El Paso, LLC,* No. 18-cv-254, 2019 WL 13472245, at *1 n.2 (W.D. Tex. Mar. 13, 2019).

¶ 30, PageID 8 (emphasis added). Wichmann's allegedly misleading statement—the entire basis for the first of each of HealthPro's statutory claims—references his former employment with HealthPro. The Court concludes that these claims—that is both the Lanham Act claim and the Ohio Deceptive Trade Practices Act claim predicated on Wichmann's misleading statements that he owned HealthPro's proprietary formulas—relate to Wichmann's employment and therefore must be arbitrated.

The same is not true, however, for HealthPro's second theory supporting these claims. This latter theory relies exclusively on allegations that Wichmann and InStar copied portions of HealthPro's packaging. *Id.* Those allegations do not reference Wichmann's employment, nor would they need to do so—HealthPro can tell its entire story, and liability can attach, without any reference to Wichmann's tenure as CEO there. Accordingly, HealthPro's secondary claims—a Lanham Act claim and an Ohio Deceptive Trade Practices Act claim predicated on InStar's alleged copying of portions of HealthPro's packaging—are unrelated to the employment agreement. As a result, these claims need not be arbitrated.

HealthPro says that none of the six counts it asserts here are subject to arbitration, but its arguments fail to persuade. HealthPro states that, as the "master of its complaint," it chose not to sue Wichmann for breach of contract. Doc. 17, PageID 111 (cleaned up). And because it chose to sue Wichmann and InStar only in tort, HealthPro argues that its claims do not relate to the employment agreement. But the arbitration clause does not limit the parties' duty to arbitrate only to those claims that assert a breach of the agreement's *terms*. Rather, the parties must arbitrate any "controversy or claim arising out of or *relating to*" the employment agreement. Doc. 14-1, ¶ 18, PageID 94. And tort claims, as HealthPro itself acknowledged in its earlier state-court complaint, can fit that bill. *See* Compl. at ¶¶ 16–17, *HealthPro Brands, Inc.*

9

*v. Wichmann*, A2200047 (Hamilton Cnty. Ct. Com. Pl. Jan. 6, 2022). Tort claims whose nucleus of operative facts "touch matters" covered by an underlying contractual agreement can still arise out of or relate to such an agreement. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003); *Academy of Medicine*, 842 N.E.2d at 493 ("Arbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision."). That is the case here. Although Wichmann's purported liability stems from common-law duties rather than contractual ones, the claims nevertheless *relate* to the underlying employment agreement because the duties exist solely due to his employment (or at least Wichmann's breach of those duties was possible only because of his employment). Accordingly, HealthPro's claims (save those explicitly enumerated above) must be arbitrated, notwithstanding their classification as torts.[6]

**B.  HealthPro's Claims Against InStar Must be Arbitrated.**

HealthPro further argues that regardless of whether its claims against Wichmann are subject to arbitration, its arbitration agreement with Wichmann does not reach its claims against InStar. Doc. 17, PageID 113–14. Wichmann and InStar counter that HealthPro is

---

[6] Indeed, HealthPro may want to be careful about the potential unintended consequences that could follow from arguing otherwise. Most—if not all—of the claims HealthPro now seeks to raise are claims that, absent the arbitration provision, could have been raised in the state suit. In fact, HealthPro expressly acknowledged as much in the state action as to many of the causes of action it seeks to raise here. *See* Compl., ¶¶ 16–17, *HealthPro Brands, Inc. v. Wichmann*, A2200047 (Hamilton Cnty. Ct. Com. Pl. Jan. 6, 2022). But that in turn could give rise to claim preclusion concerns. Under the full faith and credit statute, federal courts must give state judicial proceedings the same preclusive effect they would have in the courts of that state. *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738). Here, HealthPro brought its earlier suit in an Ohio state court, which means this Court would look to Ohio law to see if the judgment in that previous action would bar the claims it now seeks to raise here. And under Ohio law, if (1) a newly raised claim arises out of the same transaction or occurrence underlying a claim in a prior action, and (2) the party could have brought the newly raised claim in that earlier action, and (3) the state court adjudicated that action on the merits, then (4) res judicata bars the party from asserting that new claim in the later action. *See Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). HealthPro may not fully appreciate that the sword it seeks to wield in an effort to fend off arbitration has two edges.

10

equitably estopped from objecting to arbitration with InStar because its claims against Wichmann and InStar are bound to each other. Doc. 14, PageID 82–83; Doc. 19, PageID 127–28. Wichmann and InStar have the better of this argument.

When disputes between parties to an arbitration agreement entangle nonsignatories, Ohio law sometimes requires those nonsignatories to arbitrate their claims. *See I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4, 7–11 (Ohio Ct. App. 2004). One such category, predicated on an estoppel theory, allows a signatory to an arbitration agreement to compel a nonsignatory to arbitrate when the nonsignatory has knowingly accepted the benefits of an agreement containing an arbitration clause. *Katz v. Katz*, 2018-Ohio-3210, at ¶¶ 30–36 (Ohio Ct. App. 2018) (compelling an individual who received a membership interest of an LLC pursuant to a divorce settlement to arbitrate claims against a different company pursuant to a membership agreement because she represented herself as a member and received benefits as a member). But here the script is flipped. InStar (a nonsignatory to the employment agreement) seeks to compel HealthPro (a signatory) to arbitrate its claims against InStar. In that circumstance, the nonsignatory need only show that the signatory—here, HealthPro—raised allegations of "substantially interdependent and concerted misconduct by both the nonsignatory [InStar] and one or more of the signatories [Wichmann]." *Discovery Res., Inc. v. Ernst & Young U.S. LLP*, 62 N.E.3d 714, 720 (Ohio Ct. App. 2016) (cleaned up).

HealthPro's allegations meet that test. Every claim it asserts against InStar alleges some form of concerted misconduct by InStar and Wichmann. *See, e.g.,* Doc. 1, ¶ 40, PageID 10 ("Defendants, through their conduct . . . wrongfully have converted [HealthPro's] [p]roperty."); *id.* at ¶ 44, PageID 10 ("Defendants, through their actions described above, have violated the Lanham Act, as Wichmann's statements[,] made on his personal behalf and on

11

behalf of co-defendant InStar . . . .") (cleaned up). Because HealthPro alleges Wichmann and InStar engaged in concerted misconduct, such that its claims against them are substantially interdependent, HealthPro must arbitrate those of its claims against InStar that are intertwined with its claims against Wichmann.

**C.     The Court Opts to Stay the Action Rather than Dismiss the Arbitrable Claims.**

Lastly, having concluded that most, but not all, of HealthPro's claims must be arbitrated, the Court must decide whether to stay this case pending arbitration or dismiss the arbitrable claims. *See Stout*, 228 F.3d at 714; *Norberg v. iPreCheck, LLC*, No. 1:22-cv-177, 2023 WL 1100344, at *4 (S.D. Ohio Jan. 30, 2023). Dismissal is typically appropriate when all claims before the Court are arbitrable. *McGill Smith Punshon, Inc. v. Fireblocks, LLC*, No. 3:18-cv-288, 2019 WL 3578651, at *8 (S.D. Ohio Aug. 6, 2019). But where, as here, only some claims are subject to an arbitration agreement, the proper course is to stay the action pending arbitration rather than dismiss the complaint outright. *See id.* Accordingly, the Court will **STAY** this action pending arbitration of those claims that the Court has determined are subject to the arbitration agreement. *See* Doc. 14, PageID 84 (alternatively asking the Court to stay the action in lieu of dismissal).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Wichmann's and InStar's Motion to Dismiss Plaintiff's Complaint or, Alternatively, to Stay Pending Arbitration (Doc. 14) to the extent described above. The Court **STAYS** this action pending the completion of the contractually mandated arbitration as to those claims the Court has stated must be arbitrated (Counts I, II, V, VI, and portions of Counts III and IV). The Court further

**ORDERS** the parties to advise the Court when that arbitration is complete by filing a joint status report within fourteen (14) days of the conclusion of the arbitration.

  **SO ORDERED.**

September 4, 2024
**DATE**

*Jeffrey P. Hopkins*
**JEFFREY P. HOPKINS**
**UNITED STATES DISTRICT JUDGE**